# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the YELLOW LINE CASES,<br><br>LEAD CASE: *Glover et al. v. Washington Metropolitan Area Transit Authority*<br><br>v.<br><br>THIS DOCUMENT RELATES TO:<br><br>JAYAN VATASSERY<br>521 South 9th Street<br>Unit #1<br>Minneapolis, Minnesota 55404<br><br>and<br><br>ANUPAMA NOOKALA, M.D.<br>521 South 9th Street<br>Unit #1<br>Minneapolis, Minnesota 55404<br><br>   Plaintiffs,<br><br>v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, (a/k/a WMATA)<br>600 Fifth Street NW<br>Washington, DC 20001<br><br>   Defendant. | Case No. _____ (TSC)(GMH) |

ETHRIDGE QUINN
KEMP McAULIFFE
ROWAN &
HARTINGER
LAW OFFICES • EST. 1987

## COMPLAINT FOR DAMAGES

COME NOW the Plaintiffs, Jayan Vatassery and Anupama Nookala, by and through their attorneys, Michael J. McAuliffe, and Ethridge, Quinn, Kemp, McAuliffe, Rowan, and Hartinger; and respectfully move for judgment against Defendant, Washington Metropolitan Area Transit Authority ("WMATA"), on grounds and in the amount set forth below:

## JURISDICTION AND VENUE

1. Jurisdiction in this Court is founded on the Washington Metropolitan Area Transit Regional Compact, which establishes original jurisdiction in this Court over WMATA matters pursuant to WMATRC Article XVI § 81, codified in the District of Columbia under D.C. Code Ann. §9-1107.10.

2. Venue in this Court is proper as the negligent acts and/or omissions committed by Defendant occurred in the District of Columbia, and the injuries of the Plaintiffs occurred in the District of Columbia.

## PARTIES

3. At all relevant times, Plaintiff, Jayan Vatassery, was and is an adult resident of Minnesota.

4. At all relevant times, Plaintiff, Anupama Nookala, was and is an adult resident of Minnesota.

5. At all relevant times, Plaintiffs, Jayan Vatassery and Anupama Nookala, were and are married to each other as husband and wife.

6. At all relevant times, Defendant WMATA was the owner of the Metro subway system being operated by its employees, who were acting within the course and scope of their employment and/or agency with WMATA. Defendant operates in the District of Columbia,

Maryland and Virginia. The incident from which these claims arise occurred in the District of Columbia.

## FACTS

7. On the afternoon of January 12, 2015, at approximately 3:15 p.m., Plaintiffs were aboard a Metro train 302 (hereinafter the "Train") travelling southbound on the yellow line from the L'Enfant Plaza metro station towards the Pentagon station.

8. Shortly after departing from the L'Enfant Plaza metro station and entering the tunnel, the Train came to a sudden stop due to a thick smoke in the tunnel. The smoke entered the Train causing Plaintiffs and other passengers to inhale and breathe in significant amounts harmful smoke.

9. The passengers including Plaintiffs were trapped on the Train in the tunnel and were forced to breathe in the smoke before finally being evacuated about forty-five minutes after the Train was initially stopped.

10. Plaintiffs, along with the other passengers, sustained pulmonary injuries from inhaling smoke while trapped on the Train for a substantial period of time. Further, the Plaintiffs suffered emotional distress while fearing for their own lives, the lives of each other, and the lives of everyone else on trapped on the train.

11. The National Transportation Safety Board (hereinafter "NTSB" or the "Board") immediately began investigating the incident of January 12, 2015, and released its preliminary report on January 16, 2015.[1] (Exhibit 1: Preliminary Report, Jan. 16, 2015).

---

[1] National Transportation Safety Board, *Preliminary Report: WMATA Smoke and Electrical Arcing Accident in Washington, DC*, Jan. 16, 2015, http://www.ntsb.gov/investigations/AccidentReports/Reports/DCA15FR004_preliminary.pdf.

ETHRIDGE QUINN KEMP McAULIFFE ROWAN & HARTINGER
LAW OFFICES · EST 1987

12. According to the Preliminary Report, an electrical breaker at one end of the section of third rail tripped at approximately 3:06 p.m.

13. The Train stopped at about 3:15 p.m. At 3:16 p.m. the WMATA Operations Control Center (hereinafter "OCC") activated ventilation fans. Due to improper maintenance, the ventilation fans offered little or no relief from the smoke.

14. The electrical breaker at the other end of the third rail section remained closed supplying an endless stream of electricity to the third rail.

15. By failing to timely open the second electrical breaker, electricity continued generate smoke from the damaged third rail by "electrical arc tracking."[2]

16. Further, by failing to timely cut off electricity to the third rail, Defendant WMATA unnecessarily delayed emergency rescuers of the D.C. Fire and Emergency Medical Services Department (hereinafter "FEMS") who could not safely enter the tunnel and access the stopped train until the electricity to the third rail was cut off. The second breaker was not opened until about 3:50 p.m.

17. Defendant WMATA further delayed FEMS by not properly calibrating its radio communications equipment to be able to effectively communicate with FEMS.

18. On June 8, 2015, NTSB issued a Safety Recommendation to address electrical short circuiting hazards on Washington's metro system.[3] (Exhibit 2: Recommendation R-15-25).

---

[2] "Electrical Arc Tracking" occurs on insulating surfaces when contaminants and moisture accumulate in a manner such that leakage currents can flow along the insulating surface, allowing a short circuit to develop.

[3] National Transportation Safety Board, *Safety Recommendation R-15-25*, June 8, 2015, http://www.ntsb.gov/safety/safety-recs/recletters/R-15-025.pdf.

ETHRIDGE QUINN
KEMP McAULIFFE
ROWAN &
HARTINGER
LAW OFFICES · EST. 1987

19. According to the NTSB's recommendation, the investigation of the January 12 incident, along with evidence from another February 11 incident, indicated a "safety issue concerning improperly constructed power cable connector assemblies."[4]

20. According to the recommendation, Defendant WMATA did not have a program to ensure that power cable connector assemblies were installed in accordance with the engineering design specifications.[5]

21. Therefore, NTSB recommended that Defendant WMATA promptly develop and implement a program to ensure proper construction and installation of all power cable connectors in accordance with the engineering design specifications.[6]

22. NTSB issued the Safety Recommendation, even though it had not completed its investigation, because the recommendation addressed a safety issue that required "immediate action" and it was "designed to prevent accidents and save lives."[7]

## COUNT I
### Negligence against Plaintiff Vatassery

23. The foregoing paragraphs are incorporated as if re-alleged herein.

24. **Defendant WMATA owed duties to the Metro passengers, including Plaintiff Vatassery.**

25. At all relevant times, Defendant WMATA had a duty to exercise reasonable care to make the premises reasonably safe for passengers; a duty to reasonably inspect, maintain, and/or repair its trains, tunnels, tracks, and other subway infrastructure components; a duty to

---

[4] *Safety Recommendation R-15-25*, p. 2.

[5] *Safety Recommendation R-15-25*, p. 9.

[6] *Safety Recommendation R-15-25*, p. 9.

[7] *Safety Recommendation R-15-25*, pp. 1 and 10.

ETHRIDGE QUINN KEMP McAULIFFE ROWAN & HARTINGER
LAW OFFICES · EST. 1987

properly construct, assemble, and/or repair any Metro subway component as to accord to the component's specifications; a duty to provide a reasonable warning of any hazard within the Metro subway stations and/or tunnels; a duty to provide emergency safety and rescue procedures in a reasonable and timely fashion to a known dangerous condition; and Defendant WMATA had a duty to otherwise provide for the reasonable safety of its passengers.

26. **Defendant WMATA breached those duties that it owed to the Metro passengers, including Plaintiff Vatassery.**

27. Defendant WMATA breached its duties by failing to exercise reasonable care to make the premises reasonably safe for passengers; by failing to reasonably inspect, maintain, and/or repair its trains, tunnels, tracks, and other subway infrastructure components; by failing to properly construct, assemble, and/or repair any Metro subway component as to accord to the component's specifications; by failing to provide a reasonable warning of any hazard within the Metro subway stations and/or tunnels; by failing to provide emergency safety and rescue procedures in a reasonable and timely fashion to a known dangerous condition; and by failing to otherwise provide for the reasonable safety of its passengers.

28. **Plaintiff Vatassery suffered physical, emotional, and mental injuries as a direct and proximate result of Defendant WMATA's breaches.**

29. Plaintiff was trapped in the Train for approximately forty-five minutes, and during that entire time, Plaintiff was forced to breathe in substantial amounts of harmful smoke causing damage to his lungs.

30. The smoke was caused by Defendant WMATA's failure to reasonably inspect, maintain, and/or repair its trains, tunnels, tracks, and other subway infrastructure components; and failure to properly construct, assemble, and/or repair any Metro subway component as to

ETHRIDGE QUINN KEMP McAULIFFE ROWAN & HARTINGER
LAW OFFICES · EST. 1987

accord to the component's specifications. Further, Plaintiff's injuries were exacerbated by Defendant's failure to provide a reasonable warning of any hazard within the Metro subway stations and/or tunnels; failure to provide emergency safety and rescue procedures in a reasonable and timely fashion to a known dangerous condition; and failure to otherwise provide for the reasonable safety of its passengers.

31. All of these injuries were caused directly and proximately by Defendant WMATA's negligence with no negligence on Plaintiff's own behalf contributing thereto.

32. Plaintiff would not have suffered such injuries but for Defendant's breaches.

33. **Plaintiff Vatassery is entitled to economic and non-economic damages.**

34. Plaintiff suffered damage to his lungs which required medical treatment.

35. Additionally, Plaintiff experienced helplessness, anxiety, anguish, fear for his own life, fear for the life of his wife who was also a passenger trapped on the Train, and fear for the lives of the other passengers.

36. Plaintiff Jayan Vatassery demands judgment against Defendant in the full and just amount of One Million Dollars ($1,000,000.00), plus interests, and costs.

## COUNT II
### Negligence against Plaintiff Nookala

37. The foregoing paragraphs are incorporated as if re-alleged herein.

38. **Defendant WMATA owed duties to the Metro passengers, including Plaintiff Nookala.**

39. At all relevant times, Defendant WMATA had a duty to exercise reasonable care to make the premises reasonably safe for passengers; a duty to reasonably inspect, maintain, and/or repair its trains, tunnels, tracks, and other subway infrastructure components; a duty to properly construct, assemble, and/or repair any Metro subway component as to accord to the

ETHRIDGE QUINN KEMP McAULIFFE ROWAN & HARTINGER
LAW OFFICES · EST. 1987

component's specifications; a duty to provide a reasonable warning of any hazard within the Metro subway stations and/or tunnels; a duty to provide emergency safety and rescue procedures in a reasonable and timely fashion to a known dangerous condition; and Defendant WMATA had a duty to otherwise provide for the reasonable safety of its passengers.

40. **Defendant WMATA breached those duties that it owed to the Metro passengers, including Plaintiff Nookala.**

41. Defendant WMATA breached its duties by failing to exercise reasonable care to make the premises reasonably safe for passengers; by failing to reasonably inspect, maintain, and/or repair its trains, tunnels, tracks, and other subway infrastructure components; by failing to properly construct, assemble, and/or repair any Metro subway component as to accord to the component's specifications; by failing to provide a reasonable warning of any hazard within the Metro subway stations and/or tunnels; by failing to provide emergency safety and rescue procedures in a reasonable and timely fashion to a known dangerous condition; and by failing to otherwise provide for the reasonable safety of its passengers.

42. **Plaintiff Nookala suffered physical, emotional, and mental injuries as a direct and proximate result of Defendant WMATA's breaches.**

43. Plaintiff was trapped in the Train for approximately forty-five minutes, and during that entire time, Plaintiff was forced to breathe in substantial amounts of harmful smoke causing damage to her lungs.

44. The smoke was caused by Defendant WMATA's failure to reasonably inspect, maintain, and/or repair its trains, tunnels, tracks, and other subway infrastructure components; and failure to properly construct, assemble, and/or repair any Metro subway component as to accord to the component's specifications. Further, Plaintiff's injuries were exacerbated by

ETHRIDGE QUINN KEMP McAULIFFE ROWAN & HARTINGER
LAW OFFICES · EST. 1987

Defendant's failure to provide a reasonable warning of any hazard within the Metro subway stations and/or tunnels; failure to provide emergency safety and rescue procedures in a reasonable and timely fashion to a known dangerous condition; and failure to otherwise provide for the reasonable safety of its passengers.

45. All of these injuries were caused directly and proximately by Defendant WMATA's negligence with no negligence on Plaintiff's own behalf contributing thereto.

46. Plaintiff would not have suffered such injuries but for Defendant's breaches.

47. **Plaintiff Nookala is entitled to economic and non-economic damages.**

48. Plaintiff suffered damage to her lungs which required medical treatment.

49. Additionally, Plaintiff experienced helplessness, anxiety, anguish, fear for her own life, fear for the life of her husband who was also a passenger trapped on the Train, and fear for the lives of the other passengers.

50. Plaintiff Anupama Nookala demands judgment against Defendant in the full and just amount of One Million Dollars ($1,000,000.00), plus interests, and costs.

## CONCLUSION

51. Wherefore Plaintiffs respectfully request that this Court enter judgment in their favor and against the Defendant WMATA in an amount no less than Two Million Dollars ($2,000,000.00), plus interest and costs, and any other and further such relief as this Court deems just and proper.

## JURY DEMAND

52. Plaintiffs hereby demand a trial by jury with respect to each claim in this Complaint.

ETHRIDGE QUINN
KEMP McAULIFFE
ROWAN &
HARTINGER
LAW OFFICES · EST.1987

Respectfully submitted,

ETHRIDGE QUINN KEMP McAULIFFE
ROWAN & HARTINGER

*[signature]*

MICHAEL J. McAULIFFE #412880
33 Wood Lane
Rockville, Maryland 20850
Phone: (301) 762-1696
Facsimile: (301) 762-7691
*Attorney for Plaintiffs*

ETHRIDGE QUINN
KEMP McAULIFFE
ROWAN &
HARTINGER
LAW OFFICES · EST. 1987